IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PHILLIP HEATON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   CIVIL ACTION NO. 15-224-CG-C |
| | ) |
| | ) |
| GEICO INSURANCE COMPANY | ) |
| OF ALABAMA, | ) |
| | ) |
|     Defendant. | |

**ORDER and MEMORANDUM OPINION**

This matter is before the Court on a motion for summary judgment filed by Defendant Geico Insurance Company of Alabama ("Defendant") (Doc. 46), response in opposition filed by Plaintiff Phillip Heaton ("Plaintiff") (Doc. 53), and reply by Defendant (Doc. 54). For the reasons stated below, Defendant's motion is **GRANTED**.

**I. FACTUAL BACKGROUND**

In July 2009, Plaintiff resided with his parents, Jasper and Mary Heaton, in Foley, Alabama. At that time, Jasper and Mary owned a 2008 Kia Optima insured with Defendant under an Alabama automobile insurance policy ("the Policy").[1] (Doc. 46-4). The Policy contained uninsured/underinsured motorist coverage ("UIM coverage"). *Id.* at 4. As it pertains to UIM coverage, the Policy explained as follows:

---

[1] There is a question as to whether the Kia Optima is a 2008 or 2009. Since the Policy indicates it is a 2008, that is what the Court uses.

> Under the Uninsured Motorists Coverage we will pay damages for bodily injury caused by accident which the insured is legally entitled to recover from the owner or operator of the uninsured auto or hit-and-run auto arising out of the ownership, maintenance or use of that auto.
>
> The amount of the insured's recovery for these damages will be determined by agreement between the insured or his representative and us.  The dispute may be arbitrated if an agreement cannot be reached.

*Id.* at 14.  UIM coverage, however, "does not apply to bodily injury to an insured if the insured or his legal representative has made settlement or has been awarded a judgment of his claim without [Defendant's] prior approval." *Id.*

As it relates to UIM coverage, the person or persons named in the declaration are not the only persons covered.  Instead, "relatives of [the person(s) named in the declaration] if residents of his household" are also provided UIM coverage.  *Id.* Defendant does not contest that Plaintiff meets this criteria.  (Doc. 46-1, p. 2). Bodily injury to any person covered includes injury "resulting [in] sickness, disease or death."  *Id.* at 7.  Although the language above primarily speaks to uninsured motorist or autos, the Policy also covers underinsured motorist or auto situations in UIM coverage claims.  *Id.* at 14.

While a resident of his parents' home, Plaintiff's nephew needed a way back to Galveston, Texas for work.  (Doc. 46-2, p. 2).  Plaintiff's parents were unable to drive to Texas, so Plaintiff drove his nephew to Texas using the 2008 Kia Optima his parents owned.  *Id.*  While in Texas on July 23, 2009, Gerald Ray Rivera ("Rivera") struck the 2008 Kia Optima Plaintiff was driving.  Plaintiff suffered extensive physical injury and the 2008 Kia Optima was totaled.  *Id.* at 5.

On August 25, 2009, a Texas division of Defendant's company wrote Plaintiff's father, Jasper Heaton, in accordance with Texas law regarding recovery of any deductible Jasper Heaton paid under the Policy. The letter stated, in relevant part:

> Please be advised that in accordance with Section 542.204 of the Texas Insurance Code, we are notifying you that with respect to recovery of your deductible or our subrogation interest, we do not intend to take further collection actions against the third party(ies) who may be liable for this claim. As such, we hereby authorize you to bring an action at your option and your expense against the responsible third party(ies), if any, in order to attempt to recover your deductible.

(Doc. 53, p. 3). Jasper Heaton had a $500.00 deductible for any collision damage the 2008 Kia Optima sustained. (Doc. 46-4, p. 4). The extent of Plaintiff's contact with Defendant was related to reimbursement of certain medication and mileage expenses under Defendant's "med pay" portion of the policy, which totaled approximately $5,000.00. (Doc. 46-2, pp. 8–9). The Policy capped medical payments at $5,000.00. (Doc. 46-4, p. 4).

On July 1, 2011, Plaintiff filed suit against Rivera and Kia Motors Corporation in a Texas court, under representation of a Texas attorney. (Doc. 46-2, p. 27). Relevant to the instant motion, Plaintiff brought a negligence claim against Rivera for the injuries he sustained in the accident. *Id.* 32. During the pendency of the suit, Plaintiff's Texas attorney was aware of the Policy. *Id.* at 11. Plaintiff spoke with his Texas attorney about adding Defendant to the suit because of Rivera's "minimal coverage." Defendant, however, was never added and an UIM claim was never filed. *Id.* at 16. The Texas attorney told Plaintiff that he would

have to retain an Alabama attorney if he wanted to file an UIM claim. *Id.* at 20. Plaintiff testified that he did not send a letter to Defendant informing it that the lawsuit had been initiated in Texas. *Id.* at 21. Further, Plaintiff testified that he was unaware of whether the Texas attorney wrote Defendant informing it of the Texas lawsuit. *Id.* But evidence suggests Defendant was aware that Plaintiff filed suit against Rivera in a Texas court. (Doc. 53, p. 4).

On November 20, 2012, Plaintiff and Rivera reached a final settlement in the amount of $5,000.00 for the negligence claim. (Doc. 46-2, p. 35). Thereupon, the Texas court entered a final judgment, which denied any further claims against Rivera in regards to the accident. *Id.* Plaintiff testified that he has no knowledge of whether the Texas attorney ever communicated with Defendant prior to entering settlement with Rivera. *Id.* at 22. Additionally, Plaintiff did not inform Defendant of the settlement, settlement specifics, or a potential UIM claim prior to entering settlement with Rivera. *Id.* at 24–25.

On April 28, 2015, Plaintiff, acting pro se, initiated the present suit. (Doc. 1). On October 27, 2015, Plaintiff, then represented by counsel, filed his First Amended Complaint. (Doc. 25). Therein he claimed Defendant breached the Policy by "failing to pay Plaintiff's bodily injury and pain and suffering claim" that falls under the Policy's UIM coverage. *Id.* at 4.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted: "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The mere existence of a factual dispute will not automatically necessitate denial; rather, only factual disputes that are material preclude entry of summary judgment. *Lofton v. Sec'y of Dep't of Children & Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, at 249-250. (internal citations omitted).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company*, 32 F.3d 520, 524 (11th Cir. 1994)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response .... must be by affidavits or as otherwise provided in this rule be set by out specific facts showing a genuine issue for trial." *Vega v. Invsco Group, Ltd.*, 2011 WL 2533755, at *2 (11th Cir. 2011). In reviewing whether a non-moving party has met its burden, the Court must draw all justifiable inferences in favor of the non-moving party. *Tipton v. Bergrohr GMBH-*

*Siegen*, 965 F.2d 994, 998 – 99 (11th Cir. 1992) (citations omitted). Thus the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.

### III. DISCUSSION

Defendant contends that summary judgment is due because Plaintiff forfeited his right to UIM coverage under the Policy by failing to provide Defendant "with prior notice of a negotiated settlement and executed release with [Rivera] and his liability insurance carrier." (Doc. 46-1, p. 4). In support of its position, Defendant cites to *Lambert v. State Farm Mutual Automobile Insurance Company*, 576 So. 2d 160 (Ala. 1991), and its progeny.

In *Lambert*, the Alabama Supreme Court evaluated the legal landscape of consent-to-settle clauses in uninsured/underinsured insurance policies within Alabama. Finding such clauses did not violate public policy, the court concluded that consent-to-settle clauses were necessary "to protect the underinsured motorist insurance carrier's subrogation rights against the tort-feasor (sic), as well as to protect the carrier against the possibility of collusion between the insured and the tort-feasor (sic) at the carrier's expense." 576 So. 2d at 164 (citation omitted). However, this protection should be counterbalanced with the insured's guarantee that he "will receive the benefits of the bargain he has made." *Id.* at 166. Addressing these dual interests, the *Lambert* Court set forth procedures to be applied in the context of UIM claim disputes. *Id.* The court explained, in relevant

part:

(1) The insured, or the insured's counsel, should give notice to the underinsured motorist insurance carrier of the claim under the policy for underinsurance benefits as soon as it appears that the insured's damages may exceed the tortfeasor's limits of liability coverage.

(2) If the tort-feasor's (sic) liability insurance carrier and the insured enter into negotiations that ultimately lead to a proposed compromise or settlement of the insured's claim against the tort-feasor (sic), and if the settlement would release the tort-feasor (sic) from all liability, then the insured, before agreeing to the settlement, should immediately notify the underinsured motorist insurance carrier of the proposed settlement and the terms of any proposed release.

(3) At the time the insured informs the underinsured motorist insurance carrier of the tort-feasor's (sic) intent to settle, the insured should also inform the carrier as to whether the insured will seek underinsured motorist benefits in addition to the benefits payable under the settlement proposal, so that the carrier can determine whether it will refuse to consent to the settlement, will waive its right of subrogation against the tort-feasor (sic), or will deny any obligation to pay underinsured motorist benefits.  If the insured gives the underinsured motorist insurance carrier notice of the claim for underinsured motorist benefits, as may be provided for in the policy, the carrier should immediately begin investigating the claim, should conclude such investigation within a reasonable time, and should notify its insured of the action it proposes with regard to the claim for underinsured motorist benefits.

(4) The insured should not settle with the tort-feasor (sic) without first allowing the underinsured motorist insurance carrier a reasonable time within which to investigate the insured's claim and to notify its insured of its proposed action.

(5) If the uninsured motorist insurance carrier refuses to consent to a settlement by its insured with the tortfeasor, or if the carrier denies the claim of its insured without a good faith investigation into its merits, or if the carrier does not conduct its investigation in a reasonable time, the carrier would, by any of those actions, waive any right to subrogation against the tort-feasor (sic) or the tortfeasor's insurer.

(6) If the underinsured motorist carrier wants to protect its

>subrogation rights, it must within a reasonable time, and in any event before the tort-feasor (sic) is released by the carrier's insured, advance to its insured an amount equal to the tort-feasor's (sic) settlement offer.

*Lambert*, 576 So. 2d at 167. Any procedure implemented must take the facts and circumstances of each case into consideration. *Id.*

Since *Lambert* was handed down, the Alabama Supreme Court has routinely rejected an insured's UIM coverage claim where the insured failed to provide prior notice of a settlement and release with a tortfeasor to the UIM insurer. *See Downey v. Travelers Prop. Cas. Ins. Co.*, 74 So. 3d 952, 957 (Ala. 2011) (answering a federal court's certified question and concluding that the insured's failure to give prior notice to the UIM insurer of a proposed settlement and release of a tortfeasor forfeited the UIM coverage); *Overstreet v. Safeway Ins. Co. of Alabama*, 740 So. 2d 1053, 1060 (Ala. 1999) (upholding the trial court's grant of summary judgment in favor of the UIM insurer where the insured failed to provide the UIM insurer with notice of settlement with the tortfeasor prior to entry of such settlement); *Allstate Ins. Co. v. Beavers*, 611 So. 2d 348, 353 (Ala. 1992) (reversing the trial court's summary judgment decision and ordering summary judgment in favor of the UIM insurer where the insured failed to provide notice of a proposed settlement and release to the UIM insurer prior to entry of said settlement); *Brantley v. State Farm Mut. Auto. Ins. Co.*, 586 So. 2d 184, 187–88 (Ala. 1991) (upholding the trial court's grant of summary judgment in favor of the UIM insurer where the insured failed to provide the UIM insurer with notice of an UIM claim prior to reaching a settlement agreement and release with a tortfeasor).

Here, the Policy contained UIM coverage that Plaintiff could file a claim against, and Plaintiff was aware of it in some manner since he contemplated adding Defendant to the Texas suit given Rivera's "minimum coverage." (Doc. 46-2, p. 16). The Policy clearly required Plaintiff obtain prior written consent from Defendant before settling with Rivera if Plaintiff intended to pursue an UIM claim. (Doc. 46-4, p. 14). This requirement comports with Alabama law. Plaintiff, however, neither offers evidence that he or his Texas attorney provided Defendant with notice of the settlement and release regarding Rivera prior to entering into the settlement nor does he dispute that he did not provide such notice to Defendant.

In an attempt to circumvent his failure to notify Defendant of the settlement and release, Plaintiff contends that, under Defendant's August 25, 2009, letter, he "was not required to provide Defendant [ ] with the '*Lambert*' notice because [Defendant] had effectively, if not ambivalently, waived any notice" requirement when Defendant "specifically wrote that [it] was not pursuing its subrogation interest." (Doc. 53, p. 1). Further, Plaintiff contends that Defendant was aware of the Texas lawsuit prior to the present action. *Id*. at 2. Defendant responds that the letter in question was not in any way related to a potential UIM claim or a waiver of its notice of settlement and settlement terms right. (Doc. 54, p. 2).

To begin with, Plaintiff's contention that Defendant's knowledge of the Texas lawsuit has some bearing can be quickly dismissed. "[T]he relevant notice is not notice of the action against the alleged tortfeasor, but notice of the intent to settle that action and to pursue UIM coverage for additional damages." *Ex parte Morgan*,

9

13 So. 3d 385, 389 (Ala. 2009).

In regards to the letter, as illustrated above, on August 25, 2009, Defendant sent a letter to Jasper Heaton, Plaintiff's father, after the accident but before Plaintiff brought suit against Rivera. *See* (Doc. 53, p. 3). Defendant sent the letter in accordance with Texas law, which states, in its entirety:

> (a) Notwithstanding any other provision of this code and except as provided by Subsection (b), if an insurer is liable to an insured for a claim that is subject to a deductible payable by the insured and a third party may be liable to the insurer or the insured for the amount of the deductible, the insurer shall:
>
> > (1) take action to recover the deductible against the third party not later than the first anniversary of the date the insured's claim is paid; or
> >
> > (2) pay the amount of the deductible to the insured.
>
> (b) An insurer is not required to take action or pay the amount of the deductible as required by Subsection (a) if, not later than the earlier of the first anniversary of the date the insured's claim is paid or the 90th day before the date the statute of limitations for a negligence action expires, the insurer:
>
> > (1) notifies the insured in writing that the insurer does not intend to take further collection actions against the third party; and
> >
> > (2) authorizes the insured to take further collection actions.
>
> (c) This section applies regardless of whether the third party who may be liable for the amount of the deductible is insured or uninsured.

Tex. Ins. Code Ann. art. 542.204 (West 2004).

Review of this statute clarifies that the August 25, 2009, letter is not as sweeping as Plaintiff contends but limited to Defendant's unwillingness to pay or seek recovery of any collision deductible paid by Jasper Heaton. To be sure, the

10

title of the statute characterizes its nature as addressing an "Action to Recover Deductible." Thus, the letter waived subrogation against Rivera as it relates to the deductible and merely authorized Jasper Heaton "to attempt to recover his deductible," if he even paid one. (Doc. 53, p. 3). And the deductible relates to property damage the 2008 Kia Optima sustained, not physical injury Plaintiff suffered.

Even given the deferential standard Plaintiff is due, it cannot be said Defendant "effectively, if not ambivalently, waived [in the letter] any notice" it was due according to *Lambert* for several reasons. First, Plaintiff cites no caselaw in support of his position. Second, under Alabama law, waiver of a contractual right occurs when a party voluntarily relinquishes a known right, benefit, or advantage. *Buco Bldg. Constructors, Inc. v. Myrick*, 863 So. 2d 1130, 1135 (Ala. Civ. App. 2003); *Waters v. Taylor*, 527 So. 2d 139, 141 (Ala. Civ. App. 1988). Nowhere does the letter allude to or intimate that Defendant was waiving its notice rights or subrogation rights against Rivera as they may relate to an UIM claim brought by Plaintiff under the Policy, expressly or implicitly. The letter does not even mention Plaintiff's name or his injuries. Furthermore, when the August 25, 2009, letter was sent, Plaintiff had yet to file the Texas lawsuit. If the lawsuit had yet to be filed and there was no communication otherwise, Defendant could not be aware that a claim for UIM coverage was coming down the pike. If Defendant was unaware of an UIM claim regarding Plaintiff, it cannot be said to have knowing and voluntarily relinquished its right to notice of the settlement or subrogation under *Lambert*.

Moreover, *Lambert's* general rules contemplate that effective waiver occurs after notice of the potential settlement and UIM claim. *See Lambert*, 576 So. 2d at 167. This being because, after notice, the UIM insurer is afforded a reasonable time in which it may conduct an investigation and determine whether it wants to "refuse to consent to the settlement, [ ] waive its right of subrogation against the tortfeasor, or [ ] deny any obligation to pay underinsured motorist benefits." *Id*. To conclude that the letter sent approximately two years before filing suit against Rivera was a waiver under *Lambert* of a then unknown right effectively renders Defendant's right to investigate before consent an empty measure.

Thus, Plaintiff forfeited his right to receive UIM benefits when he settled with Rivera and his insurer and gave a full release, without providing adequate notice to Defendant of the proposed settlement and of the terms of the release. Based on this, Defendant is due summary judgment as a matter of law.

## IV. CONCLUSION

Given the above, Defendant's Motion for Summary Judgment (Doc. 46) is **GRANTED**.

**DONE** and **ORDERED** this 23rd day of January, 2017.

/s/  Callie V. S. Granade
SENIOR UNITED STATES DISTRICT JUDGE